IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS KIMBLE, | ) | |
| | ) | Civil Action No. 19 – 1681 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MR. BARRY SMITH, *Superintendent of SCI Houtzdale*, Mr. LEO DUNN, *Chair of Pennsylvania Board of Probation and Parole (PBPP)*, and MR. JOSH SHAPIRO, *Pennsylvania Attorney General*, | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

## **MEMORANDUM OPINION**[1]

Currently pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Douglas Kimble ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 3.) The Petition challenges the decision made by the Pennsylvania Board of Probation and Parole ("the Board") on December 11, 2019, to rescind their grant of reparole to Petitioner. For the following reasons, the Petition will be denied.

**A. Relevant Background**

Petitioner is an inmate currently in the custody of the Pennsylvania Department of Corrections ("DOC"). On April 25, 2007, he received a sentence of five to ten years of incarceration, followed by three years of probation, after pleading guilty to drug and other related offenses at CP-02-CR-0018982-2005 in the Court of Common Pleas of Allegheny County

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 10 & 11.

("original sentence"). On June 30, 2017, while on parole,[2] Petitioner was arrested and charged with aggravated assault, robbery, theft and conspiracy at CP-02-CR-0008510-2017, and he was charged with providing false identification to a law enforcement officer at CP-02-CR-0008543-2017. By the Board's decision recorded on July 26, 2017, Petitioner was detained on parole violations pending disposition of the new criminal charges. (ECF No. 8-1, p.2.)

On November 7, 2017, Petitioner entered a guilty plea to the false identification charge at CP-02-CR-0008543-2017. By a decision recorded on February 1, 2018, the Board decided to recommit Petitioner to a State Correctional Institution to serve six months backtime on his original sentence as a convicted parole violator. As a result, his new maximum date was calculated to be May 2, 2019. Id., pp.3-12.

On January 25, 2018, Petitioner entered a guilty plea to the aggravated assault charge at CP-02-CR-0008510-2017, and he was sentenced to one to two years of incarceration, followed by two years of probation. By a decision recorded on June 19, 2018, the Board decided to recommit Petitioner to a State Correctional Institution to serve twenty-four months backtime on his original sentence as a convicted parole violator, concurrently to the six months backtime the Board ordered on February 1, 2018. As a result, his new maximum date was calculated to be October 4, 2022. (ECF No. 12, pp.5-8.)

By a decision recorded on August 28, 2019, the Board granted Petitioner reparole "on or after 10/9/2019 to state detainer sentence." (ECF No. 8-1, pp.17-20.) On September 13, 2019, prior to reparole, Petitioner received a misconduct in prison for fighting, and, as a result, he received thirty days of disciplinary custody. Id., p.21. On October 29, 2019, the DOC rescinded their parole support for Petitioner due to the fighting misconduct. Id., p.22. By a decision

---

[2] The record does not reflect when Petitioner was released on parole.

recorded on December 11, 2019, the Board rescinded their action recorded on August 28, 2019, and officially denied Petitioner reparole. Id., p.23.

Petitioner initiated the instant habeas proceedings on or about December 31, 2019. (ECF No. 1.) His Petition was docketed on January 10, 2020. (ECF No. 3.) Respondents filed their Response to the Petition on March 2, 2020. (ECF No. 8.) The Petition is now ripe for review.

### B. Discussion

In his Petition, Petitioner claims that the Board denied him due process when they rescinded its decision granting him reparole. Specifically, he claims that the misconduct he received, which formed the basis for the Board's decision, was the result of him defending himself and others from an inmate who wanted to cause them harm, but he was never afforded the opportunity to discuss the incident in another interview with the Board before they decided to rescind their decision. He also argues that the Board's decision was "arbitrary and capricious," perhaps because he was not provided with an opportunity to defend himself before the Board acted. Although the Petition does not distinguish procedural due process from substantive due process, it appears that Petitioner is attempting to raise a claim for violations of both. Therefore, both will be addressed.

#### 1. Procedural Due Process

Petitioner appears to argue that the Board violated his right to procedural due process because they failed to interview him again before rescinding their decision to grant him reparole. Specifically, he claims that without another interview he could not explain to them the circumstances surrounding the incident that resulted in his receipt of the misconduct for fighting.

The Fourteenth Amendment to the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. CONST.

amend. XIV.  An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps.  See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972).  First, the court must determine whether there exists a liberty or property interest which has been interfered with by the state.  Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (citing Board of Regents, 408 U.S. at 571).  Second, and if and only if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient.  Id. (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)).

The underlying liberty interest can be derived directly from the Due Process Clause or from the state's statutory scheme.  See Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources:  the Due Process Clause or the laws of a state.").  The Supreme Court has held that the Constitution does not establish a liberty interest in parole that invokes due process protections.  See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  Thus, if prisoners in Pennsylvania have a protected liberty interest in some aspect of their parole, it must derive from Pennsylvania law.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (recognizing that "States may . . . create liberty interests which are protected by the Due Process Clause").  The statutes governing Pennsylvania's Board of Probation and Parole, however, do not grant state prisoners any constitutionally protected liberty interest in being released on parole prior to the expiration of their controlling maximum sentences.  See Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing the general principle that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled); Coady v. Vaughn, 770 A.2d 287, 289 (Pa. 2001) ("It is

undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same.").

Since Petitioner has no constitutionally protected liberty interest in parole or any parole procedures, his claim for a due process violation based on the lack of an interview before the Board decided to rescind its grant of reparole necessarily must fail.  *See*, *e.g.*, Newman v. Beard, 2008 WL 2149605, at *2 (W.D. Pa. May 21, 2008) (claim for violation of due process based on lack of written record for the interview conducted by the Pennsylvania Board of Probation and Parole fails because there is no liberty interest in parole or any of its procedures); Nellom v. Luber, 2004 WL 816922, at *10 (E.D. Pa. Mar. 18, 2004) (due process violation claim based on lack of parole hearing interview fails because there is no constitutionally protected liberty interest in either being granted parole or having a parole hearing).

## 2. Substantive Due Process

Petitioner appears to argue that the Board violated his right to substantive due process because their decision to rescind their grant of reparole was "arbitrary and capricious."

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  Conduct can violate substantive due process if it "'shocks the conscience,' which encompasses 'only the most egregious official conduct.'"  Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392, 400 (3d Cir. 2003)).  The Third Circuit Court of Appeals has acknowledged that the meaning of this "shocks the conscience" standard varies depending on the factual context.  *See* United Artists Theatre Circuit, Inc., 316 F.3d at 399-400 (citing cases).

5

With regard to parole decisions, the Third Circuit has stated that "[e]ven if a state statute does not give rise to a liberty interest in parole . . ., once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980).  As an example, it stated that "[c]learly, the Board would violate due process if it bases a decision on constitutionally impermissible criteria such as race, religion, or the exercise of free speech rights."  Id., at 237 (citing Perry v. Sindermann, 408 U.S. 593 (1972)).  It further explained that the Board would abuse its discretion so as to violate an inmate's right to due process of law if it "basis its decision on factors that bear no rational relationship" to "the purpose and policies underlying the parole system[.]"  Id.

Petitioner appears to argue that the Board's decision was "arbitrary and capricious" because he was not provided with an opportunity to defend himself before it issued its decision, but there is nothing in the record to suggest that the Board acted in a manner so as to violate his due process rights.  Indeed, nothing in the record suggests that the Board rescinded its grant of reparole based on any constitutionally impermissible reason, nor is there anything to suggest that the Board based its decision on factors that were foreign to the purpose of the parole statute.  In fact, the Board's decision reflects that it rescinded its grant of reparole solely because of the misconduct that Petitioner had received, and in making its decision, the Board was permitted to consider Petitioner's "conduct . . . while in prison."  61 Pa. C.S.A. § 6135(a)(7).  Accordingly, there is no valid argument by which Petitioner could claim that the Board's decision met the "conscious shocking" standard required to show a violation of due process.  Furthermore, federal courts are "not authorized to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."  Coady v. Vaughn, 251 F.3d

6

480, 487 (3d Cir. 2001). Here, there was "some basis" for the Board's decision, and, as such, there can be no finding that its decision violated Petitioner's due process rights.

### C. Certificate of Appealability

AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a section 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not made the requisite showing in this case. Accordingly, a certificate of appealability will be denied. A separate Order will issue.

Dated:  March 31, 2021.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Douglas Kimble
JA-5639
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA  16698-1000

Counsel of record
(Via CM/ECF electronic mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS KIMBLE, | ) | |
| | ) | Civil Action No. 19 – 1681 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MR. BARRY SMITH, *Superintendent of SCI Houtzdale*, Mr. LEO DUNN, *Chair of Pennsylvania Board of Probation and Parole (PBPP)*, and MR. JOSH SHAPIRO, *Pennsylvania Attorney General*, | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

## ORDER

**AND NOW**, this 31st day of March 2021;

**IT IS HEREBY ORDERED** that, for the reasons set forth in the accompanying Memorandum Opinion, the Petition for Writ of Habeas Corpus (ECF No. 3) is **DENIED.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Douglas Kimble
JA-5639
SCI Houtzdale

P.O. Box 1000
Houtzdale, PA  16698-1000

Counsel of record
(Via CM/ECF electronic mail)